IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| ROLAYNE HENDRICKS, Plaintiff, v. MICHAEL ASTRUE, Commissioner of Social Security, Defendant. | **MEMORANDUM DECISION and ORDER AFFIRMING COMMISSIONER'S DECISION** Case No. 2:08-CV-253-DN Magistrate Judge David Nuffer |
|---|---|

Plaintiff RoLayne Hendricks seeks judicial review of the Commissioner's decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.[1] On February 23, 2011, the case was referred to the Magistrate Judge, with the consent of the parties, to conduct all proceedings under 28 U.S.C. § 636(c).[2]

Ms. Hendricks applied for DIB and SSI on July 15, 2005, alleging disability since June 1, 2003, due to chronic fatigue syndrome, severe anemia, a chemical imbalance, fibromyalgia, excessive yeast in her body, mild arrhythmia, and migraine headaches.[3] The Social Security Administration denied her application initially and on reconsideration.[4] On August 22, 2007, she received a de novo hearing before an administrative law judge (ALJ), who issued a decision on September 27, 2007, finding Hendricks was not disabled within the meaning of the Social

---

[1] See 42 U.S.C. §§ 401-33, 1381-83f.

[2] Notice, Consent, and Order of Reference – Exercise of Jurisdiction by a United States Magistrate Judge, docket no. 29, filed February 23, 2011.

[3] R. 75-76, 97-98, 107.

[4] R. 36, 38, 44-46, 48-51.

Security Act because she could perform a limited range of sedentary work. The Appeals Council denied review,[5] making the ALJ's decision the Commissioner's final decision. Ms. Hendricks then filed for judicial review in this court alleging that the ALJ's findings are not supported by substantial evidence.

The ALJ applied the familiar five step evaluation process in determining whether Hendricks was disabled. At the first step, the ALJ found Dickson had not engaged in any substantial gainful activity since her alleged onset date.[6] At the second step, the ALJ found that Hendricks had severe impairments within the meaning of the regulations: morbid obesity, migraine headache disorder and affective disorder.[7] At step three, the ALJ found that Hendricks's impairments did not meet or equal the requirements of the Listings.[8] At step four, the ALJ found that Hendricks retained the residual functional capacity for sedentary work[9] with the some restrictions:

> she can occasionally climb stairs, ramps, ladders, ropes, and scaffolds; balance, stoop, kneel, crouch, and crawl. She has no manipulative, visual, communicative, environmental, or mental limitations. She is not significantly limited in her ability to understand, carry out, and remember instructions. She had adequate judgment for decision making at the simple, routine level. She should only have occasional interaction with the general public and requires a stable work environment with few changes in the routine. She must be capable of sitting or standing at will. She can normally sit for thirty to forty-five minutes at one time and then stand for five minutes, before resuming sitting.[10]

---

[5] R. 3-6.

[6] R. 13; 20 C.F.R. § 404.1520(a)(4).

[7] R. 13-14; 20 C.F.R § 404.1520(c).

[8] R. 14-15; 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings).

[9] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." Although a sedentary job is defined as one which involves sitting, "a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[10] R. 15-16.

The ALJ found that Hendricks could not perform her past relevant work with this residual functional capacity (RFC).[11] At step five, the ALJ, relying on the opinion of a vocational expert, found that Hendricks retained the residual functional capacity to perform a significant number of sedentary unskilled jobs in the national economy.[12] Therefore, the ALJ found she was not disabled.[13]

Ms. Hendricks argues that the ALJ's decision is not supported by substantial evidence because he (1) misanalysed medical evidence, (2) improperly discounted her subjective complaints and credibility, and (3) ignored other vocational factors in determining her RFC and national job availability.[14]

First, Hendricks argues that the ALJ misanalysed the medical evidence and "discount[ed] the treating physicians'[15] reports."[16] The ALJ must evaluate all medical opinions in the record and is required to give controlling weight to the opinion of the treating physician so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record.[17] "Medical opinions" are opinions about the nature and severity of an individual's impairments and are the only opinions that may be entitled to controlling weight.[18] Opinions that a claimant is "disabled" are not medical opinions, but opinions on the application of the statute, which are reserved to the

---

[11] R. 21.

[12] R. 21-22.

[13] R. 22-23.

[14] Plaintiff's Memorandum of Law at 14-15, docket no. 25, filed Sept. 1, 2009.

[15] Treating physicians are Mark Rada, M.D. and Robert M. Payne, M.D.

[16] Plaintiff's Memorandum of Law at 17-18.

[17] *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1527(d)(2).

[18] *See* 20 C.F.R. § 404.1527(a).

Commissioner.[19] The ALJ may discount the treating physician's opinion if it is internally inconsistent or inconsistent with other evidence.[20]

The treating physicians, Drs. Payne and Rada, made numerous statements regarding Hendricks's functional limitations, that she was "disabled" and that she was "unable to work."[21] The ALJ accepted the opinions of the treating physician regarding the medical issues of Hendricks impairments, but found that the treating physicians' opinions regarding her residual functional capacity were "issues reserved to the Commissioner.[22] The ALJ determined that the treating physicians' opinions of extreme limitations were unsupported by objective record evidence, including their own treatment notes.[23] Hendricks concedes that it is undisputed that neither Dr. Lynch[24] nor Dr. Koening[25] could "find the existence of a medically objective physical impairment that would prevent Ms. Hendricks from working."[26] In fact, none of the other medical providers in this case could corroborate the extreme conclusions made by the treating physicians.[27] Accordingly, the ALJ properly gave less weight to the treating physicians' opinions because they were not supported by substantial record evidence.

---

[19] 20 C.F.R. § 404.1527(e)(1).

[20] *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007).

[21] *See* Statements by Dr. Rada at R. 283-88, 294; Statements of Dr. Payne at R. 180-89, 206-07, 291-92.

[22] R. 22.

[23] R. 17-21.

[24] Christopher Lynch, M.D. examined Ms. Hendricks at the request of the Commissioner. Defendant's Answer Brief at 8, docket no. 27, filed Sept. 28, 2009.

[25] Curry M. Koening, M.D. is a rheumatologist to whom Ms. Hendricks was referred by her treating physician, Mark Rada, M.D. R. 265.

[26] Plaintiff's Memorandum of Law at 18.

[27] *See* Statements of Dr. Koenig at R. 265-70 ("no tender points to be consistent with fibromyalgia syndrome"); Statements of Dr. Lynch at R. 168-72 ("I am unable to document exam findings that suggest this patient has decreased ability to sit, stand, lift, carry, handle objects, hear, speak or travel."); Statements of Dr. Allen at R. 174-78 (average range in fund of knowledge and concentration/attention).

Next, Ms. Hendricks claims that the ALJ improperly minimized her subjective complaints in finding her not totally credible. The ALJ is required to provide specific, legitimate reasons when finding that subjective complaints regarding the severity of symptoms are not totally credible.[28] In this case, the ALJ found that Hendricks's subjective complaints that her symptoms were so severe and disabling were inconsistent with the objective medical evidence and her daily activities.[29] The findings of Drs. Payne, Rada, Koening, and Lynch did not support the degree of physical symptomology and limitation that Hendricks alleged.[30] Additionally, the findings of Drs. Payne, Lynch, and Allen did not support the degree of mental symptomology and limitations Plaintiff alleged.[31] The ALJ also found that Hendricks's lack of treatment for her allegedly disabling migraine headaches undermined her credibility.[32] From her onset date through the date of the hearing, there was only one treating source record in which Plaintiff's migraine headaches were discussed[33] and only two in which a specific medication for migraines (Zomig) was prescribed.[34]

---

[28] *See* SSR 97-7p (Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements); *see also Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).

[29] R. 16-21.

[30] R. 169-72 (normal reflexes and neurological functioning, full strength and ability to lift, carry, squat and rise); R. 289-90 (normal range of motion, full strength in all extremities); R. 301-02 (no neurological deficits and no abnormal reflexes).

[31] R. 168-72 (appropriate mood and clear thought processes with normal memory, good concentration, and no compromise of thought or reasoning); R. 174-78 (cognizant and clear and oriented to time, place, and person with good remote memory and average ability to concentrate, knowledge, and recent/immediate memory); R. 209-10 (moderate improvement in depression with Effexor).

[32] R. 17; *See Shepherd v. Apfel*, 184 F.3d 1196, 1202 (10th Cir. 1999) (ALJ's credibility determination supported by claimant's failure to seek medical treatment).

[33] R. 195.

[34] R. 195 (symptoms discussed and Zomig provided), R. 227 (no discussion of symptoms in notes, Zomig prescribed).

The ALJ found that Hendricks's daily activities also supported his finding that her subjective complaints were not entirely credible.[35] On an SSA Function Report in September 2005, Hendricks reported her daily activities were eating breakfast, working on dishes or cleaning for 30-40 minutes, and then resting for an hour or two before lunch. She said she helped her husband dress and fix meals. She said she fed her dogs and cats, watered her lawn and flowers, did laundry, did light housework, and grocery shopped.[36] When reporting to Dr. Lynch in November 2005, Hendricks stated that her typical daily activity consists of doing light housework, cooking when able and resting.[37] The following month, she reported to Dr. Allen that she "spen[t] most of her time caring for her home and husband who [was] disabled and, to a lesser extent, her son who also ha[d] functional limitations."[38] At the hearing in August 2007, Hendricks testified that her activities consisted of getting up, preparing breakfast for herself and her husband, making lunch for herself and husband, helping her husband dress, trying to do dishes and laundry, doing housework, going to the store or bank, sometimes fixing dinner, feeding her animals, visiting neighbors and friends, vacuuming, watering her lawn, and driving five times per week.[39] Her husband testified about her daily activities, including that she cared for their animals, prepared meals, did housework, did all of the grocery shopping, and went out to eat.[40]

Hendricks asserts that the ALJ discounted her testimony only because it could not be completely substantiated by the objective medical evidence. But, it is clear from his ruling that

---

[35] R. 17.

[36] R. 84-91.

[37] R. 169.

[38] R. 178.

[39] R. 357-62.

[40] R. 370-72.

the ALJ considered all the appropriate factors[41] in assessing Hendricks's credibility. The ALJ fully discussed how Hendricks's statements about her symptoms not only conflicted with the objective medical evidence, but also with her lack of treatment for some symptoms and with her daily living activities. The ALJ's credibility determination is adequately supported in his findings.

Finally, Hendricks argues that the ALJ misanalysed the evidence of residual functional capacity by not including all of her claimed limitations in his hypothetical questions to the vocational expert.[42] An ALJ is only required to include limitations supported in the record in his hypothetical questions to the vocational expert.[43] As discussed earlier, many of Hendricks's subjective complaints were not fully supported by the record evidence and therefore were not make part of the hypothetical question to the vocational expert. The ALJ did include many RFC restrictions, supported by the record, in the hypothetical posed to the vocational expert.[44] In response, the vocational expert testified that the restrictions would reduce by ten to twenty percent the wide range of entry level, light, and sedentary occupations found in the *Dictionary of Occupations Titles* (DOT) and provided examples of these jobs as: call-out operator (218,000 jobs in the national economy), surveillance systems monitor (150,000 jobs in the national economy), and final assembler (60,000 jobs in the national economy).[45]

The ALJ then proposed further RFC restrictions to the hypothetical by adding a sit/stand option (sitting for 30-45 minutes at one time and standing for five minutes at a time, alternating at will), sedentary lifting (ten pounds occasionally, less than ten pounds frequently), and a total

---

[41] R. 16. *See also* 20 C.F.R. 404.1529(c) and 416.929(e); SSR 97-7p.

[42] Plaintiff's Memorandum of Law at 28, 33-36.

[43] *See Jordan v. Heckler,* 835 F.2d 1314, 1317 (10th Cir. 1987).

[44] R. 378-79.

[45] R. 380.

of two hours of standing/walking and six hours of sitting in an eight hour workday.[46] The vocational expert responded to this hypothetical by testifying that the individual could perform the same jobs previously identified (call-out operator, surveillance systems monitor, and final assembler), but that the numbers of those jobs would be further reduced by 30 percent.[47] When the ALJ found that Hendricks could perform a significant number of jobs in the national economy, and that she was not disabled he relied on the vocational expert's testimony.[48] Hendricks contends that the ALJ's second and more complete RFC hypothetical resulting in a 30 percent reduction in the available jobs "never found its way into the Administrative Law Judge's decision."[49] This contention is misplaced, as the ALJ's final decision clearly shows the available job numbers were reduced.[50]

## ORDER

IT IS HEREBY ORDERED that the ALJ's decision is AFFIRMED because it is supported by substantial evidence and free of legal error.

Dated this 29th day of September, 2011.

BY THE COURT

_____
Magistrate Judge David Nuffer

---

[46] R. 380-81.

[47] R. 381.

[48] R. 21-22; *See Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (when findings regarding a claimant's impairment are adequately reflected in the ALJ's hypothetical question to the vocational expert, the vocational expert's testimony constitutes substantial evidence to support the ALJ's related determination).

[49] Plaintiff's Memorandum of Law at 34.

[50] R. 22 (reducing each job identified by 30 percent).